# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R&R SAILS, INC. dba HOBIE CAT COMPANY,<br><br>                                    Plaintiff,<br><br>   vs.<br><br>PREMIER INCENTIVE GROUP, LLC; COSTCO WHOLESALE CORPORATION; and DOES 1-100, Inclusive,<br><br>                                    Defendants. | CASE NO. 11-CV-2866 JLS (WMc)<br><br>**ORDER GRANTING IN PART DEFENDANT COSTCO'S MOTION TO DISMISS**<br><br>(ECF No. 9) |

Presently before the Court is a motion brought by Defendant Costco Wholesale Corporation ("Costco") to dismiss four of the claims in Plaintiff's Second Amended Complaint ("SAC"). (MTD, ECF No. 9.) Plaintiff opposes the motion (Opp'n, ECF No. 12), and Defendant has filed a reply in support of the motion (Reply, ECF No. 15). The Court deemed the matter appropriate for determination without oral argument and took it under submission pursuant to Civil Local Rule 7.1(d)(1). After careful consideration of the parties' arguments and the law, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's sole federal claim only. Plaintiff is granted leave to amend, and Defendants are ordered to show cause why the remaining state law claims should not be remanded for lack of subject matter jurisdiction.

**BACKGROUND**

**1. Factual History**

Plaintiff R&R Sails, Inc., d/b/a Hobie Cat Company ("Hobie Cat" or "Plaintiff"), a Missouri corporation with its principal place of business in Oceanside, California, engages in designing and manufacturing several types of boats and kayaks. (SAC ¶¶ 1, 8, Ex. 33 to Notice of Removal, ECF No. 1-8.) Defendant Premier Incentive Group, LLC ("Premier") is a Nevada company in the business of providing various incentives programs to clients. (*Id.* at ¶ 2.) Defendant Costco, a Washington corporation, is the largest "membership warehouse club chain" in the United States, with stores throughout the country, including California. (*Id.* at ¶ 3.)

Hobie Cat distributes its boats and kayaks to consumers worldwide "through a complex network of sales representatives and dealers appointed and authorized by Hobie Cat," in a highly regulated system intended to protect its dealers. (SAC ¶ 8.) This system is apparently very important to the operation of the Hobie Cat sales scheme, and "Hobie Cat honors the commitment of its sales representatives and dealers by NOT selling its products outside this sales and dealer chain." (*Id.* at ¶ 9.) However, in this action Hobie Cat alleges Premier and Costco have circumvented that sales scheme and have thereby undermined Hobie Cat's business model.

In Summer 2010, David Russell of Premier contacted Hobie Cat to inquire about purchasing 100 "Hobie Cat Mirage Oasis" kayaks. (*Id.* at ¶ 10.) Mr. Russell told a contact at Hobie Cat that Premier planned to use the kayaks for an employee incentive for one of its insurance company clients. (*Id.*) Based on the volume of kayaks ordered, Hobie Cat offered Premier a discounted price of $161,900, as well as free shipping. (*Id.*) The kayaks were shipped on November 22, 2010 to the address given by Premier in Las Vegas, Nevada. (*Id.*) Subsequently, on April 2, 2011, Hobie Cat employees saw at least three Mirage Oasis kayaks on display and for sale at a Costco warehouse store in Carlsbad, California. (*Id.* at ¶ 11.) After cross-referencing the serial numbers, Hobie Cat found these were the same kayaks sold to Premier in November, 2010. (*Id.* at ¶ 12.) Hobie Cat has apparently determined that its kayaks have been sold at various Costco locations throughout the United States, including several in California, as well as stores in Japan. (*Id.*)

1       Hobie Cat now believes that Premier and Costco have been working together in a scheme to obtain merchandise for sale at Costco warehouses.  Under Hobie Cat's formulation, Costco arranged for employees from Premier to buy kayaks from Hobie Cat under false representations, and then to sell or transfer those kayaks to Costco without Hobie Cat's permission or knowledge. (*Id.* at ¶¶ 13-14.)  Hobie Cat had apparently received several inquiries from Costco about buying kayaks for sale in their warehouses, but had declined those requests "as Costco does not fit into Hobie Cat's distribution model."  (*Id.* at ¶ 13.)  Thus, Hobie Cat believes Costco devised this scheme with Premier in order to "intentionally circumvent Hobie Cat's dealer network." (*Id.* at ¶ 15.)  These schemes, termed "diverter networks," are apparently well-known by "manufacturers of high-end products," which often spurn Costco's attempts to offer their high-end products for resale in Costco warehouses.  (*Id.* at ¶ 16.)  In such schemes, "diverters" like Premier establish the appearance of a legitimate business in order to purchase products that Costco has been unable to obtain directly for resale, in order to circumvent manufacturers' policies and allow Costco to get those products directly from the diverters.  (*Id.* at ¶¶ 16-18.)

      Hobie Cat alleges these actions by Premier and Costco have caused "immeasurable harm" to Hobie Cat by damaging its protected trademarks and intellectual property, its goodwill with its customers, authorized sales representatives and dealers, relationships, pricing and profitability, and strategic marketing campaigns.  (*Id.* at ¶ 20.)  This action ensued.

**2. Procedural History**

      Hobie Cat first filed claims against Costco and Premier in state court.  (*See generally* Notice of Removal, ECF No. 1.)  Defendants were not served with the original complaint.  (*Id.* at ¶ 1.)  A copy of the First Amended Complaint ("FAC") was served on Defendants in April, 2011, alleging five causes of action under state law: unfair competition, intentional interference with contractual relations, negligent interference with economic relations, unjust enrichment, and fraud. (*Id.* at ¶ 2.)  Apparently, federal subject matter jurisdiction did not exist over the FAC because, though the parties appear to be diverse, the amount in controversy is not over $75,000.  (*Id.* at ¶ 3.)

      Hobie Cat was granted leave to file the operative SAC on November 18, 2011.  (*Id.* at ¶ 4.) The SAC added new causes of action under state law for fraud, conversion, and conspiracy, and

also added a federal claim for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* (*Id.*) Asserting federal question jurisdiction based on this new RICO claim, Costco removed the action to this Court on December 8, 2011. A few days later, on December 15, 2011, Costco filed the instant motion to dismiss the newly added causes of action in the SAC, namely the fifth (fraud), sixth (conversion), seventh (conspiracy), and eighth (RICO).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific

1 analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation
2 omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere
3 possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is
4 entitled to relief.'" *Id.* Moreover, "for a complaint to be dismissed because the allegations give
5 rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading."
6 *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (internal quotations omitted).

7     Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court
8 determines that the allegation of other facts consistent with the challenged pleading could not
9 possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.
10 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
11 1986)). In other words, where leave to amend would be futile, the Court may deny leave to
12 amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

13 **ANALYSIS**

14 **1. RICO Claim**

15     Hobie Cat's eighth cause of action, and sole federal claim, asserts RICO violations against
16 Premier and Costco. (SAC ¶¶ 67-83.) The RICO Act, 18 U.S.C. §§ 1961, *et seq.*, prohibits certain
17 conduct involving a "pattern of racketeering activity," and makes a private right of action available
18 to "[a]ny person injured in his business or property by reason of a violation" of RICO's
19 substantive restrictions, provided that the alleged violation was the proximate cause of the injury.
20 *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Hobie Cat bases its RICO
21 claim upon "many acts over the course of at least a two year period," namely mail fraud and wire
22 fraud. (SAC ¶ 76.) Accordingly, the Court finds that Rule 9(b)'s heightened pleading standards
23 apply to Hobie Cat's RICO allegations. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066
24 (9th Cir. 2004) ("Rule 9(b)'s [heightened pleading requirement] . . . applies to civil RICO fraud
25 claims.") (citing *Alan Neuman Prods, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)).
26 Applying Rule 9(b), the Court finds the SAC's allegations deficient.

27     At minimum, the Court agrees with Costco that Hobie Cat has not adequately alleged
28 conduct which violates the statute. (*See* MTD 10.) RICO outlaws four types of racketeering-

1  related activities. *See* 18 U.S.C. § 1962.  First, it prohibits investment of income derived "from a
2  pattern of racketeering activity or through collection of an unlawful debt" in "any enterprise which
3  is engaged in, or the activities of which affect, interstate or foreign commerce." *Id.* § 1962(a).
4  Next, RICO forbids the use of racketeering activity or unlawful collection of debt "to maintain
5  . . . any interest in or control of any enterprise which is engaged in, or the activities of which
6  affect, interstate or foreign commerce." *Id.* § 1962(b).  Third, no one "employed by or associated
7  with any enterprise" may conduct the "enterprise's affairs through a pattern of racketeering
8  activity or collection of unlawful debt." *Id.* § 1962(c).  Finally, RICO outlaws conspiracies to
9  violate the first three provisions.  *Id.* § 1962(d).

10        The SAC does not specify which subsection of the statute Defendants have violated.
11  Generally, Hobie Cat alleges that Defendants "engaged in a continuing series of schemes to induce
12  manufacturers of merchandise (in case, Hobie Cat) to unsuspectingly transfer their property to
13  diverters participating in a diverter network by fraud and deceit with the intention of wrongfully
14  obtaining the property of the manufacturers for the purpose of unauthorized resale of the
15  manufacturers' property at Costco retail locations throughout California, the United States, Japan
16  and other places abroad." (*Id.* at ¶ 71.)  In its opposition to Costco's motion to dismiss, Hobie Cat
17  asserts this states a claim for a RICO violation under subsection (c), which prohibits conducting
18  the affairs of an enterprise through "a pattern of racketeering activity." (Opp'n 6-7.)  Specifically,
19  Hobie Cat argues it has adequately pled a pattern of racketeering activity by alleging "at least two
20  acts of specifically listed conduct, for example, wire or mail fraud, occurring within ten years of
21  each other." (*Id.* at 7).  Hobie Cat points to the list contained in its SAC of emails between
22  representatives of Premier and Hobie Cat, and between different representatives of Costco.  (*See*
23  SAC ¶ 79.)  None of these emails appears to be between any representative of Premier and any
24  representative of Costco.  Nor is it clear from the SAC how these emails establish any pattern of
25  racketeering activity, or even in what way they constitute mail or wire fraud.

26        Instead, all that is apparent from the SAC is that Hobie Cat *believes* Premier and Costco
27  are engaged in a joint venture premised on Premier's nondisclosure of information to Hobie Cat
28  that Hobie Cat finds important in deciding whether to sell its product.  Hobie Cat does not address

whether such nondisclosure is illegal or may constitute "racketeering activity," instead merely pointing to a list of emails as proof of "wire fraud." Further, Hobie Cat's allegations based "on information belief" are insufficient to support its RICO claim under the stricter requirements of Rule 9(b). *See, e.g., Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (holding, in the RICO context, that "a plaintiff who makes allegations on information and belief must state the factual basis for the belief") (citations omitted)); *New England Data Servs., Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987) (applying Rule 9(b) to a civil RICO claim and stating that allegations based on "information and belief" are insufficient to satisfy 9(b)'s particularity requirement).

In short, the SAC simply does not allege facts with sufficient particularity for the Court to ascertain "the who, what when, where, and how" of the supposed racketeering activity each Defendant has engaged in. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Accordingly, the Court finds Hobie Cat has failed to state a cognizable claim under the RICO Act.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim for violations of the RICO Act **WITHOUT PREJUDICE**. The Court grants Plaintiff an opportunity to amend, to remedy the sufficiencies of pleading noted in this Order. If Plaintiff wishes, it may file an amended complaint within 15 days of the date this Order is electronically docketed. By that same date, because this Order dismisses Plaintiff's sole federal claim, and Defendant Costco's notice of removal is premised entirely on the propriety of federal question jurisdiction, Defendant is ordered to show cause why the remaining state law claims should not be remanded for lack of subject matter jurisdiction

**IT IS SO ORDERED**.

DATED: August 23, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge